UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ARGONAUT INSURANCE COMPANY, a
Foreign Corporation,

   Plaintiff,

v.                                                                  Case No.:

CM GLAZING, LLC D/B/A ACME GLASS
CONTRACT GLAZING, a Florida Limited
Liability Company, BASSO CM GLAZING
HOLDINGS, LLC, a Florida Limited
Liability Company, GELLEIN CM
GLAZING HOLDINGS, LLC, a Florida
Limited Liability Company, BASSO
ENTERPRISES, LLC, a Florida Limited
Liability Company, 20 NASHVILLE, LLC, a
Florida Limited Liability Company,
WALTER BASSO JR., individually,
WALTER BASSO SR, individually, CAROL
A. BASSO, an individual, and BRETT T.
GELLEIN, JR., an individual, RAYMOND L.
GELLEIN, JR., an individual, and
RAYMOND L. GELLEIN, as sole trustee of
the Raymond L. Gellein, Jr. Revocable Trust,

   Defendants.
_____/

**COMPLAINT FOR SPECIFIC PERFORMANCE AND DAMAGES**

Plaintiff, ARGONAUT INSURANCE COMPANY ("Argonaut"), through its counsel, sues Defendants, CM GLAZING, LLC D/B/A ACME GLASS CONTRACT GLAZING ("CM Glazing"), BASSO CM GLAZING HOLDINGS, LLC ("Basso Holdings"), GELLEIN CM GLAZING HOLDINGS, LLC ("Gellein Holdings), BASSO ENTERPRISES, LLC ("Basso Enterprises"), 20 NASHVILLE, LLC ("20 Nashville"), WALTER BASSO JR. ("Mr. Basso, Jr.) WALTER BASSO SR ("Mr. Basso, Sr."), CAROL A. BASSO ("Ms. Basso"), BRETT T.

GELLEIN, JR., ("Mr. B. Gellein"), RAYMOND L. GELLEIN, JR. ("Mr. R. Gellein"), and RAYMOND L. GELLEIN, JR. as sole trustee of the Raymond L. Gellein, Jr. Revocable Trust ("Trust"). All of these Defendants are collectively referred to in this Complaint as the "Indemnitors."

## PARTIES, JURISDICTION, AND VENUE

1. This Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Indemnitors are citizens of diverse states.

2. Argonaut is an Illinois corporation with its principal place of business in Chicago, Illinois. Its principal place of business is located at 225 W. Washington Street, 24th Floor, Chicago, Illinois 60606. That is the address listed as Argonaut's principal address in its corporate filing with the Florida Department of State, a copy of which is attached as **Exhibit "A."** Argonaut is authorized to conduct business in Florida.

3. CM Glazing is an active Florida limited liability company with its principal place of business located at 5505 Carder Road, Orlando, Orange County, Florida 32810. That is the address listed as CM Glazing's principal address in its corporate filing with the Florida Department of State, a copy of which is attached as **Exhibit "B."** Thus, in accordance with 28 U.S.C. § 1332(c)(1), CM Glazing is a citizen of Florida.

4. Basso Holdings is an active Florida limited liability company with its principal place of business located at 5505 Carder Road, Orlando, Orange County, Florida 32810. That is the address listed as Basso Holdings' principal address in its corporate filing with the Florida Department of State, a copy of which is attached as **Exhibit "C."** Thus, in accordance with 28 U.S.C. § 1332(c)(1), Basso Holdings is a citizen of Florida.

5. Gellein Holdings is an active Florida limited liability company with its principal place of business located at 801 Via Lombardy, Winter Park, Orange County, Florida 32789. That is the address listed as Gellein Holdings' principal address in its corporate filing with the Florida Department of State, a copy of which is attached as **Exhibit "D."** Thus, in accordance with 28 U.S.C. § 1332(c)(1), Gellein Holdings is a citizen of Florida.

6. Basso Enterprises is an active Florida limited liability company with its principal place of business located at 5505 Carder Road, Orlando, Orange County, Florida 32810. That is the address listed as Basso Enterprises' principal address in its corporate filing with the Florida Department of State, a copy of which is attached as **Exhibit "E."** Thus, in accordance with 28 U.S.C. § 1332(c)(1), Basso Enterprises is a citizen of Florida.

7. 20 Nashville is an active Florida limited liability company with its principal place of business located at 20 North Nashville Avenue, Orlando, Orange County, Florida 32805. That is the address listed as 20 Nashville's principal address in its corporate filing with the Florida Department of State, a copy of which is attached as **Exhibit "F."** Thus, in accordance with 28 U.S.C. § 1332(c)(1), 20 Nashville is a citizen of Florida.

8. Mr. Basso, Jr. is a resident of Florida with the address of his domicile being 1340 Chestnut Avenue, Winter Park, Florida 32789. Thus, Mr. Basso, Jr. is a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

9. Mr. Basso, Sr. is a resident of Florida with the address of his domicile being 7153 Basso Lane, Orlando, Florida 32818. Thus, Mr. Basso, Sr. is a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

10. Ms. Basso is a resident of Florida with the address of her domicile being 7153 Basso Lane, Orlando, Florida 32818. Thus, Ms. Basso is a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

11. Mr. B. Gellein. is a resident of Florida with the address of his domicile being 801 Via Lombardy, Winter Park, Florida 32789. Thus, Mr. B. Gellein, Sr. is a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

12. Mr. R. Gellein. is a resident of Florida with the address of his domicile being 642 North Interlachen Avenue, Winter Park, Florida 32789. Thus, Mr. B. Gellein, Sr. is a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

13. The trust was formed under the laws of the State of Florida. The Trust's sole trustee, Mr. R. Gellein is the sole trustee and is a resident of Florida with the address of his domicile being 642 North Interlachen Avenue, Winter Park, Florida 32789. Thus, the Trust is a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

14. The causes of action alleged herein fall within the jurisdictional limits of the Court because Argonaut seeks to recover more than $75,000.00 from the Defendants and because the damages to which Argonaut are exposed because of CM Glazing's various failures as described in this Complaint exceed $75,000.00.

15. Venue is appropriate in this Court because one or more of the Defendants reside in or have their principal place of business within the boundaries of the Middle District of Florida, and because one or more Defendants reside in or have their principal place of business located in one of the counties within the province of the Orlando Division of this Court.

## GENERAL ALLEGATIONS

16. As part of its business, Argonaut issues construction bonds and stands as surety for selected contractors.

17. In connection with its work, CM Glazing from time to time required surety construction bonds for construction projects on which it desired to work.

## THE INDEMNITY AGREEMENT

18. To confirm and secure their multiple obligations to Argonaut in exchange for Argonaut's issuance of bonds for CM Glazing, the Indemnitors entered into an indemnity agreement with Argonaut.

19. Specifically, on or about July 10, 2017, the Indemnitors each executed a General Agreement of Indemnity ("Agreement") in favor of Argonaut, its affiliates, and its agents. A copy of the Agreement is attached and incorporated into this Complaint as **Exhibit "G."**

20. The Agreement applies to any and all bonds Argonaut executed on behalf of CM Glazing, regardless of whether such bonds were executed before or after the date of the Agreement. [Exhibit G, p. 1].

21. The Agreement is just and reasonable and supported by adequate consideration.

22. The Indemnitors agreed that CM Glazing would be in default of the Agreement by, among other things:

   a. "Any indemnitor makes representations to [Argonaut] by or on behalf of any of the Indemnitors that prove to be misleading or materially false when made;"

   b. "Indemnitors fail to provide collateral in response to a proper request made by [Argonaut];"

   c. "Indemnitors breach any other provision of this Agreement."

[Exhibit G, Para. 10].

  23. According to the Agreement, the Indemnitors agreed, in part, to exonerate, indemnify, keep indemnified, and save Argonaut harmless from and against:

> Any and all Losses, as well as any other expense that [Argonaut] may incur or sustain as a result of or in connection with the furnishing, execution, renewal, continuation, or substitution of any Bond(s). Expenses including, but are not limited to: (a) the cost incurred by reason of making an independent investigation in connection with any Bond(s) or this Agreement; (b) the cost of procuring or attempting to procure [Argonaut's] release from liability or a settlement under any Bond(s) upon or in anticipation of Losses, including the defense of any action brought in connection therewith; and (c) the cost incurred in bringing suit to enforce this Agreement against any of the indemnitors.
>
> Payments of amounts due [Argonaut] hereunder, including interest, shall be made immediately upon [Argonaut's] demand. In the event of any payment by [Argonaut] the Indemnitors further agree that in any accounting between [Argonaut] and the Indemnitors, [Argonaut] shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not liability, necessity or expediency existed.

[Exhibit A, Para. 2].

  24. The Indemnitors further agreed:

> In lieu of fully collateralizing the Bonds prior to their issuance and in consideration for the execution and/or delivery of one or more Bonds, the Indemnitors agree to deposit with [Argonaut], upon demand, an amount of money or other collateral security acceptable to [Argonaut], as soon as liability exists or is asserted against [Argonaut], whether or not [Argonaut] shall have made any payment therefor, equivalent to such amount that [Argonaut], in its sole judgment, shall deem sufficient to discharge any Losses or to protect it from any potential or anticipated Losses.

[Exhibit A, Para. 4].

25. The terms of the Agreement are sufficiently clear, definite, and certain to allow this Court to enforce them.

26. The Agreement is unequivocal and specific in setting forth the Indemnitors' obligations to indemnify and keep Argonaut indemnified from "[a]ny and all Losses, as well as any other expense that [Argonaut] may incur or sustain as a result of or in connection with the furnishing, execution, renewal, continuation, or substitution of any Bond(s)" as a result of executing the construction bonds or because of the Indemnitors' failure to comply with the Agreement. [Exhibit A, Para. 2].

## **THE BONDS**

27. At the request of one or more of the Indemnitors, Argonaut issued bonds naming CM Glazing as principal. Specifically:

   a. Argonaut issued a Subcontract Labor and Material Payment Bond and Subcontract Performance Bond (collectively, the "Villages Bonds") naming CM Glazing as Principal and Wharton-Smith, Inc. ("Wharton-Smith") as Obligee for the project located at 2210 Dr. Randy McDaniel Way, The Villages, Florida (the "Villages Project"). The penal sum of the Villages Bonds is $3,826,536.50.

   b. Argonaut issued a Payment Bond and Performance Bond (collectively, the "Senate Office Bonds") naming CM Glazing as Principal and Allstate Construction, Inc. ("Allstate") as Obligee on the Senate office building exterior improvement project located at the Florida Senate building located at 400 North Monroe Street, Tallahassee, Florida (the "Florida Senate Project"). The penal sum of the Senate Office Bonds is $2,050,300.00.

    c.    Argonaut issued a Payment Bond and Performance Bond (the "JEA Headquarters Bonds") naming CM Glazing as Principal and Ryan Companies US, Inc. ("Ryan") as Obligee on the JEA Headquarters project located at 225 North Pearl Street, Jacksonville, Florida (the "JEA Headquarters Project"). The penal sum of the JEA Headquarters Bonds is $3,860,442.20.

28. The Villages Street Bonds, Senate Office Bonds, and JEA Headquarters Bonds, are herein collectively referred to as the "Bonds," while the Villages Project, Florida Senate Project, and JEA Headquarters Project are herein collectively referred to as the "Projects."

29. Several of CM Glazing's subcontractors, sub-subcontractors, and suppliers ("Claimants") made claims ("Claims") against the Bonds due to CM Glazing's failure or refusal to fulfill its performance and payment obligations, which has left Argonaut exposed to liability under the payment obligations of its Bonds.

30. Further, CM Glazing has not fulfilled all of its obligations on the Projects to enable the owners of the Projects to accept them, or the general contractors for whom CM Glazing was working to accept the work. These failures have left Argonaut exposed to demands from, and liability to, the owners, general contractors, and suppliers of the Projects under the performance obligations of its Bonds.

31. The Indemnitors have acknowledged, refused, or are unable to comply with their obligations to the Claimants, owners, and general contractors of the Projects.

32. For example, on April 17, 2023, Wharton-Smith issued a written Notice of Default to CM Glazing for failure to meet its contractual obligations at the Villages Project, including failing to complete its scope of work in accordance with the project schedule, failing to complete

its work in accordance with the quality requirements under the subcontract, and failing to pay second-tier subcontractors and suppliers.

33. On April 20, 2023, Argonaut provided additional written notice to CM Glazing of Wharton-Smith's April 17th correspondence and reaffirmed CM Glazing's obligations under the Villages Bonds and the Agreement.

34. On June 1, 2023, after CM Glazing failed to rectify the breaches of its subcontract, Wharton-Smith terminated CM Glazing's subcontract. Wharton-Smith also initiated a claim on the Villages Bonds in its correspondence.

35. Additionally, Argonaut was required to resolve at least one claim made against the Villages Bonds in the amount of $262,790.00. CM Glazing has not indemnified Argonaut to date.

36. On June 12, 2023, Allstate issued a Notice to Cure demanding CM Glazing increase productivity at the Florida Senate Project. An additional Notice to Cure was issued by Allstate to CM Glazing on June 16, 2023 because the alleged issues at the Florida Senate Project were not cured, as well as identifying additional problems with CM Glazing's work.

37. On June 23, 2023, Ryan issued a notice to CM Glazing of defective and non-conforming work completed at the JEA Headquarters Project alleging water intrusion through the curtain wall system.

38. On June 26, 2023, Allstate made a claim against the Florida Senate Project Bonds as a result of CM Glazing's lack of performance.

39. Also on June 26, 2023, because CM Glazing defaulted on its contractual obligations, Ryan issued a Notice of Claim under the JEA Headquarters Bonds.

40. As such, pursuant to the Agreement, the Indemnitors are required to reimburse Argonaut for any and all losses, including any losses as a result of the non-exhaustive examples above.

## THE COLLATERAL DEMAND

41. In addition to the losses Argonaut has so far incurred to resolve the Claims, it will continue to incur losses as a result of issuing the Bonds and responding to, investigating, and resolving other bond claims.

42. Pursuant to the Agreement, the Indemnitors are required to collateralize Argonaut to protect it from future losses. The collateral security provision of the Agreement specifically states that the Indemnitors must pay Argonaut, upon demand, "an amount of money or other collateral security acceptable to [Argonaut], as soon as liability exists or is asserted against [Argonaut], whether or not [Argonaut] shall have made any payment therefor, equivalent to such amount that [Argonaut], in its sole judgment, shall deem sufficient to discharge any Losses or to protect it from any potential or anticipated Losses." [Exhibit A, Para. 4].

43. On June 26, 2023, Argonaut demanded, in writing, that the Indemnitors provide $3,000,000.00 in collateral security to protect Argonaut from suffering losses on the Bonds.

44. To date, the Indemnitors failed to comply with, or even respond to, Argonaut's demand for collateral security.

45. Despite Argonaut's demand, the Indemnitors have failed and/or refused to comply with their joint and several obligations, failed to indemnify, reimburse, and save Argonaut harmless from claims, and failed to collateralize Argonaut to protect it from the losses, attorneys' fees, and other costs and expenses Argonaut incurred, reasonably expects to incur, and continues to incur, as a result of issuing the Bonds at the Indemnitors' request.

10

46. Argonaut retained the undersigned attorneys to represent it in this action and is obligated to pay these attorneys a reasonable fee for their services rendered.

47. Argonaut performed all of the terms, covenants, and conditions required on its part to be performed under the terms of the Agreement or has been excused from doing so.

48. All conditions precedent to maintaining this action have occurred, been excused, or otherwise been waived.

## COUNT I
## SPECIFIC PERFORMANCE

49. Argonaut realleges and incorporates the allegations in paragraphs 1 through 48 as if fully set forth herein.

50. As alleged in paragraphs 22 and 23 above, the Agreement requires the Indemnitors to deposit with Argonaut money or other security that, in its judgment, Argonaut deems sufficient to protect it from potential or anticipated losses.

51. Additionally, the Agreement requires the Indemnitors to, among other things, jointly and severally indemnify Argonaut from "an amount of money or other collateral security acceptable to [Argonaut], as soon as liability exists or is asserted against [Argonaut], whether or not [Argonaut] shall have made any payment therefor, equivalent to such amount that [Argonaut], in its sole judgment, shall deem sufficient to discharge any Losses or to protect it from any potential or anticipated Losses." [Exhibit A, Para. 4].

52. Before filing this action, Argonaut demanded in writing that the Indemnitors post collateral security as permitted in the Agreement.

53. Despite Argonaut's demands, the Indemnitors have failed to collateralize Argonaut as the Agreement requires.

54. If the requested relief is not granted, Argonaut reasonably fears that the Indemnitors may sell, transfer, dispose, lien, secure, or otherwise divert assets, thereby preventing Argonaut's access to these assets for collateralization. Such actions would irreparably harm Argonaut.

55. Argonaut's fear of further losses is reasonable based on the allegations set forth in this Complaint. The Indemnitors have specifically informed Argonaut that they have listed (or will be soon listing) the collateral for sale. Their refusal to secure Argonaut's position relative to the net proceeds of the collateral leaves Argonaut reasonably in fear that the Indemnitors will sell the collateral, receive the net proceeds, and try to put those proceeds out of Argonaut's reach.

56. Argonaut's current monetary exposure is well over $3,000,000.00, which does not include Argonaut's potential liability for attorneys' fees, interest, or costs.

57. Argonaut has no adequate remedy at law to enforce its rights and it will be irreparably harmed if the Indemnitors are not required to post collateral with Argonaut.

58. The performance Argonaut seeks is substantially identical to that promised in the Agreement.

WHEREFORE, Argonaut requests that this Court enter a decree and immediate order of specific performance compelling the Indemnitors, jointly and severally, to:

a. prevent the Indemnitors from diverting or disbursing any funds relating to the Bonds or Projects without Argonaut's express and written approval;

b. compel the Indemnitors to post a bond or suitable collateral to secure Argonaut against any alleged claims, causes of action, demands, expenses, or attorneys' fees;

c. attach, freeze, or prevent the disposition of the collateral and the Indemnitors' other assets until cash, an appropriate bond or collateral, or a binding and secured pledge

    of the proceeds of the sale of the collateral and/or other assets is posted to adequately protect Argonaut;

 d. permanently enjoin and restrain the Indemnitors from selling, transferring, disposing of, or liening the collateral and any assets or property and further enjoining and restraining the Indemnitors from allowing the collateral and any other assets or property to be encumbered unless and until Argonaut is placed in funds;

 e. grant a lien upon the collateral and all assets and property, including realty, personalty, and mixed, in which the Indemnitors have any interest. Argonaut further requests that such lien(s) shall secure Argonaut against any loss it may sustain or incur by virtue of its having executed the Bonds. Argonaut further requests that such lien(s) remain in effect unless and until Argonaut is placed in funds as requested hereinabove;

 f. require the Indemnitors, jointly and severally, to pay all attorneys' fees, costs, and expenses that Argonaut incurred;

 g. honor all further agreements and obligations contained in the Agreement; and

 h. grant such further relief as this Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT

59. Argonaut realleges and incorporates paragraphs 1 through 48 as if fully set forth herein.

60. This is an action for damages for the Indemnitors' breach of the Agreement.

61. On or about July 10, 2017, Argonaut and the Indemnitors entered the Agreement.

62. The Indemnitors are in default of, and have breached, the Agreement by:

    a. Making representations to Argonaut by or on behalf of any of the Indemnitors that prove to be misleading or materially false when made;

    b. Failing to provide collateral upon a request made by Argonaut; and

    c. Breaching any other provision of this Agreement.

63. Argonaut fully performed all of its obligations under the Agreement.

64. As a result of the Indemnitors' breaches and defaults of the Agreement, Argonaut suffered and is exposed to damages as a result of issuing the Bonds, including, but not limited to, payments to resolve claims against the Bonds, attorneys' fees, costs, and other expenses.

65. These damages continue to accrue such that Argonaut's damages are continuing in nature.

66. Argonaut is entitled to an award of its attorneys' fees and costs in pursuing this claim according to the Agreement.

WHEREFORE, Argonaut demands judgment against the Indemnitors, jointly and severally, for damages, prejudgment interest, attorneys' fees, costs, and expenses, and such further relief as this Court deems just and proper.

## COUNT III
## EXONERATION

67. Argonaut realleges and incorporates paragraphs 1 through 17 and 27 through 40 as if fully set forth herein.

68. CM Glazing has unable and/or unwilling to satisfy its obligations relating to the Projects.

69. Argonaut is not attempting to avoid its secondary liability as surety for CM Glazing. Instead, Argonaut demands that CM Glazing be compelled to fulfill its obligations to Argonaut by exonerating Argonaut from liability under the Bonds.

70. Under the doctrine of exoneration, Argonaut is entitled to have CM Glazing procure Argonaut's discharge of liability under the Bonds by obtaining releases of the Bonds or protect Argonaut from liability as a result of acting as surety for CM Glazing by way of compensating Argonaut for any damages it suffers or by providing collateral security to protect Argonaut from losses.

WHEREFORE, Argonaut requests that this Court enter an Order compelling CM Glazing to exonerate Argonaut by fulfilling its primary obligations under the Bonds, to obtain releases of Argonaut under the Bonds, and to place Argonaut in adequate security sufficient to reimburse it for the losses Argonaut suffered or may suffer.

## COUNT IV
## COMMON LAW INDEMNITY

71. Argonaut realleges and incorporates paragraphs 1 through 17 and 27 through 40 as if fully set forth herein.

72. Argonaut is without fault for any present or future claims against it as surety for CM Glazing.

73. Argonaut has a special relationship with CM Glazing by acting as its surety.

74. Argonaut's liability as surety for CM Glazing is merely technical, secondary, and vicarious to that of CM Glazing, which is actively and completely at fault, obligated to complete the work it agreed to perform for the Projects, and obligated to fulfill its obligations.

75. As a direct and proximate result of CM Glazing's failure to honor its obligations under the Bonds and its agreements on the Projects, Argonaut incurred and continues to incur damages. CM Glazing is liable to Argonaut for all damages Argonaut sustained or may sustain due to having acted as surety for CM Glazing.

WHEREFORE, Argonaut requests that this Court enter judgment against CM Glazing for damages, prejudgment interest, and such further relief as this Court deems just and proper.

## COUNT V
## EQUITABLE SUBROGATION

76. Argonaut realleges and incorporates paragraphs 1 through 17 and 27 through 40 as if fully set forth herein.

77. CM Glazing is primarily liable for claims against Argonaut relating to issuing the Bonds.

78. Argonaut's liability under the Bonds, if any, is merely technical, secondary, and vicarious to that of CM Glazing, which was actively and completely at fault for any underlying liability.

79. CM Glazing, as bond principal, is required to resolve such claims.

80. Argonaut, facing liability from potential claims on the Bonds, is equitably subrogated to the rights of the obligees on the Projects.

81. Argonaut's payments to Claimants or the owners of the Projects will be a result of its obligations as surety for CM Glazing and not as a volunteer.

82. This request for subrogation harms neither CM Glazing's nor any other third-party's rights.

83. Argonaut is equitably subrogated to the rights of the Claimants, owners of the Projects, and others entitled to payments from CM Glazing.

WHEREFORE, Argonaut demands judgment against CM Glazing for damages, prejudgment interest, and such other relief as this Court deems just and proper.

## COUNT VI
## QUIA TIMET

84. Argonaut realleges and incorporates paragraphs 1 through 48 as if fully set forth herein.

85. As a result of issuing the Bonds, Argonaut has been called upon to perform CM Glazing's obligations.

86. The Indemnitors are obligated to indemnify and keep Argonaut indemnified from incurring any liability for any losses or expenses.

87. The Indemnitors failed to meet their indemnity obligations by, among other things, failing to collateralize Argonaut as the Agreement requires.

88. The Indemnitors failed and/or refused, and continue to refuse, to perform their various obligations. Argonaut reasonably fears that it will suffer further damages due to the Indemnitors' failure to perform their obligations on the Projects, their failure to collateralize Argonaut, and their failure to satisfy the Claims and honor their obligations to Argonaut.

89. Unless the Court immediately grants the requested relief, Argonaut will be forced to incur additional attorneys' fees and costs to investigate, defend against, and resolve future claims.

90. Further, if the requested relief is not granted, as shown by their refusal to secure Argonaut's interest in the new proceeds of the sale of the Collateral, the Indemnitors may sell, transfer, dispose, lien, secure, or otherwise divert the Collateral and other assets, thereby preventing Argonaut's access to these assets for discharging the Indemnitors' obligations to exonerate and indemnify Argonaut. Such actions would irreparably harm Argonaut.

91. Argonaut is without a plain, speedy, or adequate remedy at law, and will be irreparably and permanently injured if this Court does not grant the relief sought below.

92. Argonaut is reasonably in fear of loss because: (1) as a result of investigation, Argonaut anticipates additional claims being made against the Bonds; (2) the Indemnitors have already failed to comply with their various obligations under the Agreement, including their obligations to collateralize Argonaut; and (3) the Indemnitors have advised Argonaut of their intent to sell the Collateral, but have not secured Argonaut's interest in the proceeds of the sale of the Collateral, have not otherwise perfected Argonaut's security interest in the proceeds of the sale of the Collateral, and have not provided a plan to provide the remaining collateral security.

93. Argonaut believes its current monetary exposure because of future unknown claims against the Bonds exceeds $3,000,000.00.

WHEREFORE, Argonaut requests that this Court enter an Order:

a. preventing the Indemnitors from diverting or disbursing any funds relating to the Bonds or Project without Argonaut's express and written approval;

b. permanently enjoining and restraining the Indemnitors from selling, transferring, disposing of, or liening the Collateral and any other assets or property and further enjoining and restraining the Indemnitors from allowing the Collateral and any other assets or property to be encumbered unless and until Argonaut is placed in funds;

c. granting a lien upon the Collateral and all assets and property, including realty, personalty, and mixed, in which the Indemnitors have any interest. Argonaut further requests that such lien(s) shall secure Argonaut against any loss it may sustain or incur by virtue of its having executed the Bonds. Argonaut further requests that such lien(s) remain in effect unless and until Argonaut is placed in funds as requested hereinabove;

d.      requiring the Indemnitors, jointly and severally, to pay all losses, costs, and expenses that Argonaut incurred; and

e.      granting such further relief as this Court deems just and proper.

Respectfully submitted,

/s/ *Brett D. Divers*
BRETT D. DIVERS, ESQ.
Florida Bar No. 973246
COLLIN A. MIXON, ESQ.
Florida Bar No. 1004740
PASKERT DIVERS THOMPSON
100 N. Tampa St., Ste. 3700
Tampa, FL 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
bdivers@pdtlegal.com
cmixon@pdtlegal.com
pbjelke@pdtlegal.com
*Counsel for Argonaut Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which provided electronic notice to all counsel of record.

*/s/ Brett D. Divers*_____
Attorney